UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SANDRA DECKER FULLER,

                    Plaintiff,          09-cv-6279

        v.                              **DECISION
                                        and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                    Defendant.

_____

## INTRODUCTION

Plaintiff, Sandra Decker Fuller ("Plaintiff"), brings this action pursuant to Title II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("Commissioner")denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Specifically, Plaintiff alleges that the decision of administrative law judge ("ALJ") Elizabeth W. Koennecke is not supported by substantial evidence and does not comply with the applicable legal standards. Both Plaintiff and the Commissioner move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)"). The Commissioner contends that his decision is supported by substantial evidence in the record and should therefore be affirmed.

After reviewing the record, this Court finds that the ALJ did not comply with the applicable legal standards and the

1

Commissioner's decision to deny Plaintiff's application for DIB and SSI is not supported by substantial evidence in the record. Therefore, for the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied.

## PROCEDURAL BACKGROUND

This Court adopts the summary of the procedural and factual history taken from both the Plaintiff's Memorandum of Law("P. Mem.") and the Commissioner's Memorandum of Law, the relevant portions of which are repeated here and which comport to the ALJ's summary at the hearing. Docket #4 and #7, Transcript of Administrative Proceedings ("Tr.") at 864-865. Plaintiff alleges a disability based on a back disorder, neck pain, a heart defect and depression. She is a high school graduate and has past relevant work history as a waitress. Plaintiff first filed an application for DIB and SSI on December 18, 1995 and was initially denied on February 20, 1996. Plaintiff did not appeal that denial, but reapplied for disability benefits on August 3, 1998, alleging a disability from June 15, 1997. Her claim was initially denied on February 24, 1999, and again on reconsideration on June 23, 1999. Plaintiff filed a timely request for an administrative hearing, and in a decision dated March 19, 2001, an ALJ denied her application. The Social Security Appeals Council ("Appeals Council")denied further review on August 15, 2002.

Plaintiff then filed a third application for disability benefits and SSI on October 30, 2001, alleging a disability onset date of February 1, 2001. Her application was denied on February 6, 2002, while the appeal of her previous denial was still pending.

Plaintiff filed an action in this Court to review the denial of her second application, and this Court remanded the case to the Social Security Administration, as the Commissioner was not able to locate Plaintiff's files. At that time, Plaintiff's second and third applications were consolidated and the Appeals Council directed an ALJ to re-hear Plaintiff's case. A hearing was held on August 26, 2003, and an ALJ denied Plaintiff's application. After review by the Appeals Council, Plaintiff's application was again remanded to the ALJ. Another hearing was scheduled, but Plaintiff was not able to attend the hearing and her application was summarily dismissed by the ALJ on March 23, 2005. The Appeals Council denied further review on May 11, 2005. The parties then filed a stipulation in this Court on April 16, 2007 to vacate the decision of the Appeals Counsel and remand the case for a *de novo* hearing on the merits.

ALJ Elizabeth W. Koennecke held the final administrative hearing in this case on February 4, 2009. Plaintiff was present at the hearing with her counsel, which was held by video conference. The ALJ denied Plaintiff's application in a decision dated March 17, 2009. Plaintiff then filed the instant action seeking reversal

of the ALJ's decision on May 29, 2009.

## MEDICAL BACKGROUND

Plaintiff began treatment for back pain with Dr. Steven Lasser in July 1995 and continued to see Dr. Lasser through 2001. Dr. Lasser diagnosed an acute lumbar sprain resulting from an accident at work.  Plaintiff was given a lumbar support and she began physical therapy.  X-rays were negative, pain was moderately severe and she had tenderness at L4-L5. She was out of work for approximately 7 weeks, and returned to light duty work until October 1995 when she was taken out of work because the activity severely increased her pain.  She was given a caudal epidural block and a steroid injection.  An MRI did not reveal a herniation, but her pain continued to increase. She was considered temporarily, totally disabled.

Plaintiff continued to see Dr. Lasser for low back pain that radiated down her right leg with occasional numbness in her right foot.  The pain increased with activity and Dr. Lasser opined that she had right sacroiliac joint dysfunction syndrome. Joint blocks provided temporary relief and she was referred to a chiropractor in 1996.  Dr. Lasser also prescribed caudal epidural blocks.

On April 23, 1997, Plaintiff was diagnosed with SI joint dysfunction secondary to right trochanteric bursitis and ITB inflamation secondary to abnormal gait and SI joint dysfunction after complaining of increased pain in the right hip and right

4

knee.  Physical therapy provided limited relief. She was given a knee support and a shoe lift.

Plaintiff continued to have pain in her legs and back and on October 14, 1997, a CT scan demonstrated a right-sided L5-S1 disc herniation. Dr. Lasser reviewed the CT and recommended a lumbar epidural injection, physical therapy and a repeat MRI. Plaintiff was taken out of work after an acute flare-up later in October 1997.  Her pain was aggravated by sitting and standing for long periods.  She had markedly positive straight leg raising, a herniated lumbar disc and acute right sided sciatica and was totally disabled. An epidural block provided some relief.

Plaintiff presented with paravertebral muscle spasms in early 1998.  She had positive straight leg raising and Dr. Lasser opined that her symptoms were consistent with a right sided lumbar disc herniation.  She reported continued pain throughout 1998, and an MRI on July 7, 1998 revealed minimal disc abnormalities and no evidence of stenosis or herniation.  She had a marked partial disability that was likely permanent. She then sought treatment with chiropractor, Dr. Denise Nicastro.

On January 22, 1999, Plaintiff underwent a consultative examination by Dr. Wesley Canfield.  Dr. Canfield diagnosed degenerative disc disease of the lumbar spine with sensory disturbances in an S1 and L5 dermatomal pattern on the right, and myofacial pain syndrome in the right gluteal musculature.  Her

prognosis was fair and he opined that she should not do activities which require excessive bending, lifting, carrying or ambulation.

Dr. Nicastro, D.C., submitted a report to the Social Security Administration on May 5, 1999. She reported that Plaintiff had decreased reflexes and sensory deficit on the right side and positive straight leg raising on the right. Cervical range of motion was decreased and she experienced pain in flexion, extension right rotation and right lateral flexion. At the time, Plaintiff was pregnant and her treatment options were limited. Dr. Nicastro opined that she was incapable of working at that time.

Plaintiff returned to Dr. Lasser in 2000, complaining of increased back pain following the birth of her child. An MRI was negative for herniation, and Dr. Lasser prescribed a caudal epidural block. She was also taking Vicodin three times a day and was prescribed Vioxx, but had to discontinue its use because of a heart problem. Dr. Lasser opined that she had a permanent, moderate partial disability.

In 2002, Dr. Lasser referred Plaintiff to Dr. Donovan Holder, a pain management specialist. At that time, Plaintiff was taking up to six Vicodin a day and was given a prescription for a Lidoderm patch. Dr. Holder noted that she had also tried Flexeril, Tylenol with codeine, Lortab and a TENS unit, without success. Dr. Holder reviewed an MRI which showed a mild disc bulge at L1-2 with no impingement. He diagnosed her with radicular low back pain with

sacroiliitis. He prescribed epidural steroid blocks and injections, Norco, Neurontin, and Pamelor and he discontinued her Vicodin prescription. The injections provided minimal relief. In 2003, Dr. Holder noted that she was overusing Norco. He prescribed a duragesic patch and Topamax and later increased the dosage of the patch and prescribed Ultracet. Plaintiff continued treatment with Dr. Holder with limited relief. In 2005, Plaintiff stated that her pain was unchanged and Dr. Holder recommended that she taper off her use of narcotics because they were ineffective. At the time she had been using the duragesic patches more frequently because she was attempting to work as a waitress. In November 2005, Dr. Holder authorized a refill of Plaintiff's duragesic patches, as she stated that her boyfriend had stolen them. In 2006, Dr. Holder informed Dr. Lasser that Plaintiff had been receiving duplicative narcotic prescriptions, so he would only treat her with non-narcotics. Plaintiff's pain symptoms continued throughout 2007 and 2008, despite using Norco and duragesic patches. She was also prescribed the use of a cane.

Plaintiff was also diagnosed with depression and post traumatic stress disorder. She first sought treatment from the Steuben County Community Health Center in 1998, following the death of her daughter in a car accident in which Plaintiff was the driver. She continued treatment through May of 1999. In June 2001, she returned for treatment and was diagnosed with adjustment

disorder, anxiety and depression. Her case was closed in November 2001 for loss of contact, but she called in August of 2002 and stated that she was in crisis and overwhelmed. Plaintiff reported to her treating physicians on many occasions that she was depressed. She was prescribed Paxil, Pamelor, alprazolam, Nortriptyline, Effexor, Cymbalta, Lexapro and Trazodone between 1997 and 2006 for depression, post traumatic stress disorder and anxiety. Between 2003 and 2006, Plaintiff saw Dr. Kundlas who noted in eight separate treatment notes that Plaintiff was depressed. He stated that she had a history of depression and had tried several medications including Paxil and Effexor, but she continued to be depressed.

At the request of the Commissioner, on September 14, 2004, Plaintiff was examined by consultative psychiatric examiner John Thomassen, Ph.D. Dr. Thomassen diagnosed Plaintiff with depression, severe without psychotic symptoms and congnitive disorder. He stated that her prognosis was guarded, given the severity of her symptoms and the lack of involvement in counseling. He opined that Plaintiff was likely to have difficulties performing rote tasks or following simple directions. She was also unable to perform complex tasks and was likely to have problems relating to coworkers and coping with stress.

In 2001, Plaintiff was also diagnosed with severe obstructive pulmonary disease, pulmonary hypertension and COPD. An echo

cardiogram revealed an enlargement of the right ventricle and the outflow track of the right ventricle and pulmonary artery. A pulmonary function test also revealed a grossly dilated left atrium. Her symptoms included shortness of breath, chest tightness, palpitations, fatigue, and exertional dyspnea. She was admitted to Upstate Medical University Hospital on September 4, 2001 for closure of the atrial septal defect. She was discharged with a home care plan, but continued to experience shortness of breath. Following surgery, Plaintiff's cardiac function improved. Her symptoms of shortness of breath, chest tightness and heaviness continued through 2005 and it was noted that they may be related to exertion, rather than cardiac in nature.

## DISCUSSION

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. When considering these cases, this section directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to whether or not the Commissioner's findings were supported by substantial evidence in

the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim.    See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing Court does not try a benefits case de novo).    The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Plaintiff moves for judgement on the pleadings pursuant to Rule 12(c), on the grounds that the ALJ's decision is not supported by substantial evidence in the record and is not in accordance with the applicable legal standards.    The Commissioner claims that the ALJ's decision is supported by substantial evidence in the record and moves for judgment on the pleadings to affirm this decision. Judgment on the pleadings may be granted under Rule 12 (c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If after reviewing the record, the court determines that a plaintiff has not plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" judgment on the pleadings may be appropriate. Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1940, (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,(2007)).

After a review of the complete record, this Court finds that

there is substantial evidence in the record to find that Plaintiff is disabled within the meaning of the Act. Therefore, the Plaintiff's motion for judgment on the pleadings is granted, and Commissioner's motion is denied.

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. See Tr. at 650-656. The five-step analysis requires the ALJ to consider the following:

(1)  Whether the claimant is currently engaged in substantial gainful activity;

(2)  if not, whether the claimant has a severe impairment which significantly limits her physical or mental ability to do basic work activities;

(3)  if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, if so, the claimant is presumed disabled;

(4)  if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

(5)  if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). The ALJ determined that (1) Plaintiff has not engaged in substantial gainful activity since June 15, 1997; (2) Plaintiff has a severe myofacial back impairment; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart

P, Appendix 1; (4) Plaintiff can not perform her past relevant work as a waitress; and (5) Plaintiff has the residual functional capacity to perform the full range of sedentary work, but she should not perform frequent bending. See Tr. at 651-653.

The ALJ found that Plaintiff's cardiac condition was not severe because the atrial septal defect was repaired with surgery and her continued symptoms were "most likely non-cardiac." See Tr. at 652. Additionally, the ALJ found that Plaintiff's mental impairments were not severe because "she has not maintained regular attendance at a mental health treatment facility." Id. The ALJ gave little weight to the mental health assessment of Dr. Thomassen (although performed at the request of the Commissioner) and found that Plaintiff has no limitations in daily activities and social functioning and only mild limitations in concentration, persistence and pace for the same reason. Id. Additionally, the ALJ discounted the opinions of pain specialist Dr. Holder and Plaintiff's chiropractor who both opined that Plaintiff could perform less than sedentary work. See Tr. at 654. The ALJ stated that Dr. Holder's opinion was not supported by objective medical evidence and that a chiropractor was not an acceptable source of medical opinion. Id. Instead, the ALJ chose one treatment note of Dr. Lasser from March of 1997 and the assessment of Dr. Canfield in 1999 to support her decision that the Plaintiff could perform sedentary work. Id. The ALJ gave little or no weight to the other treatment notes of Dr.

Lasser as well as the several other physicians who saw Plaintiff on a consistent or consultative basis between 1997 and February 4, 2009, the date of the hearing.

The ALJ also discounted the Plaintiff's subjective complaints because they "are not well supported by objective medical evidence." Tr. at 655. The ALJ determined that Plaintiff was not credible because she had attempted to carry her baby who weighed 18 pounds and shovel snow, concluding that "an individual with disabling back pain...would not attempt to shovel snow," and because she had been doubly prescribed for narcotic pain relievers for a period of time. Id.

This Court finds that the ALJ's decision is not supported by substantial evidence. Further, this Court finds that the ALJ improperly weighed the opinions of Plaintiff's treating physicians and improperly determined that Plaintiff's mental impairment was not severe and that she lacks credibility. Accordingly, this Court finds that there is substantial evidence in the record to find that Plaintiff is disabled within the meaning of the Act.

Plaintiff's back pain has been consistently documented by her treating physicians since 1997. Plaintiff has undergone various treatments, including being prescribed several narcotic and non-narcotic pain relievers, physical therapy, steroid injections, a TENS unit and chiropractic care with little improvement. Plaintiff has reported that her pain increases with activity, and this report

has been documented by her treating physicians.  The treatment notes of Doctor Lasser from 1995 through 2001, and Dr. Holder's opinion that Plaintiff could occasionally lift and carry up to ten pounds and could only sit, stand, and walk for one hour in an eight hour day and that she can never climb, balance, stoop, crouch, kneel crawl, push or pull, support the finding that Plaintiff is disabled within the meaning of the Act.  The opinions of these treating physicians should be given controlling weight as they are "well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in the record." See <u>Schisler v. Heckler</u>, 787 F.2d 76, 81 (2d Cir. 1986). While Dr. Lasser stated in March 1997 (prior to Plaintiff's alleged disability onset date) that Plaintiff could perform light work, he later reported that light work and domestic activity exacerbated her condition.  Since that time, Dr. Lasser's treatment notes document a continued severe impairment with limited improvement with treatment.  Additionally, while the opinion of her chiropractor Denise Nicastro by itself is not an acceptable medical source, it should have been given some weight as she had treated Plaintiff for several years and her opinion was consistent with that of the other treating physicians. See <u>Diaz v. Shalala</u>, 59 F.3d 307, 313 (2d Cir. 1995); 20 C.F.R. 404 1527(a)(2). Essentially, the ALJ cherry-picked several opinions that were supportive of her decision and disregarded the majority of the

medical evidence in the record, including that of the treating physicians. This type of selective analysis of the record is improper. See Nix v. Astrue, 2009 WL 3429616 (W.D.N.Y.)("It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.")(citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir.2004) (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir.1984))). Additionally, the ALJ's rejection of Dr. Holder's opinion because it was not based on "objective medical evidence" was error because it is well settled that such evidence is not required to support a treating physician's opinion. See Green-Younger v. Barnhart, 335 F.3d 99, 106-8 (2d Cir. 2003)(citing Donato v. Sec. of Dep't of Health and Human Servs., 721 F.2d 414, 418-19 (2d Cir.1983) ("Subjective pain may serve as the basis for establishing disability, even if ... unaccompanied by positive clinical findings of other 'objective' medical evidence").

Plaintiff's mental health condition has also been documented by her treating physicians, and she has been prescribed medication for depression, post traumatic stress disorder and anxiety since 1998. While Plaintiff has not sought continuous counseling for her condition as characterized by the ALJ (Tr. at 653), the ALJ overlooked the fact that Plaintiff has received well-documented continuous treatment from her treating physicians who recognized her depression and prescribed psychiatric medication. Dr. Holder

and Dr. Lasser continuously noted that Plaintiff was depressed and had tried several medications, including Paxil, Pamelor, alprazolam, Nortriptyline, Effexor, Cymbalta, Lexapro and Trazodone, with limited relief. Dr. Kundlas also treated the Plaintiff and noted a diagnosis of depression in eight separate treatment notes between 2003 and 2006. He stated that she had taken Paxil which did not always help and he prescribed Effexor.

The ALJ erred in giving little weight to the opinion of consultative examiner Dr. Thomassen, as it was supported by Plaintiff's history of mental illness and treatment by her treating physicians. Instead, the ALJ improperly substituted her opinion for that of a qualified medical professional. See Gilbert v. Apfel, 70 F.Supp.2d 285, 290 (W.D.N.Y. 1999)(quoting Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, nor can [he] set his own expertise against that of a physician who submitted an opinion."). Here, the ALJ disregarded the opinion of consultative physician Dr. Thomassen, who opined that Plaintiff would perform most work related tasks poorly and that she would have problems relating to co-workers, interacting with supervisors, following rules, dealing with the public, using judgment, functioning independently, maintaining attention and concentration, understanding instruction, behaving appropriately, demonstrating reliability and dealing with stress. Instead, the ALJ concluded

that based on Plaintiff's failure to consistently seek therapy, other than medication, she had no limitations in any of the areas listed in 20 C.F.R. 404.1520a. Therefore, the ALJ determined Plaintiff's mental impairment was not severe and did not consider any of the above listed limitations in determining Plaintiff's residual functional capacity. While Plaintiff did not continuously seek counseling to treat her depression, post traumatic stress disorder and anxiety, she was recognized as being depressed by her treating physicians and prescribed appropriate medication. The opinion of Dr. Thomassen in conjunction with the treatment notes of Plaintiff's treating physicians constitutes substantial evidence to show that Plaintiff's mental impairments were severe and disabling. See Richardson v. Perales,402 U.S. 389, 402 (1971) (A written report of a consultant physician who has examined the applicant can constitute substantial evidence); See also Schisler v. Brown, 851 F.2d 43 (2d Cir. 1988). Where, as here, the consultative physician examined Plaintiff and his opinion is consistent with her treating sources diagnoses of depression and her treatment with medication, it should be afforded additional weight and can be considered to be substantial evidence of a disability under the Act. Accordingly, this Court finds that the ALJ erred in failing to accord appropriate weight to the opinion of Dr. Thomassen along with the consistent opinions of her treating physicians, and that there is substantial evidence in the record to find that Plaintiff's mental

impairment is severe and disabling along with her disabling back pain.

Lastly, this Court finds that the ALJ improperly discounted Plaintiff's subjective complaints because they were not supported by objective medical evidence. See Nix 2009 WL 3429616 at *4-*5. The ALJ selected four reasons for rejecting Plaintiff's subjective complaints: the fact that she carried her 18 pound baby, she attempted to work as a waitress, attempted to shovel snow, and that she was doubly prescribed narcotics. The ALJ specifically stated that "[a]n individual with disabling back pain such as the claimant would not even attempt to shovel snow." See Tr. at 655. Additionally, at the administrative hearing, the ALJ asked why the Plaintiff would attempt to return to work as a waitress when the job is strenuous and physically demanding. See Tr. at 891-2. The Plaintiff responded, "I didn't know any other work but waitress work. And I've attempted so many times just because of financial reasons, with the pain or without the pain. I was taking more medication when I was working. And when I wasn't working, I was down and out." See Tr. at 892. The ALJ found this explanation was not credible.

The ALJ failed to properly consider the seven factors listed in 20 C.F.R. 404.1529(c)(3)[1] and failed to consider the entirety of

---

[1]"[W]here an ALJ believes that reported complaints are in excess of those that are supported by objective medical evidence, the ALJ must consider the following seven factors: (i) the claimant's daily

the record. This Court finds that when considering the entirety of the record, Plaintiff's subjective complaints of pain are credible. Plaintiff's pain has been documented by her doctors since 1995. She has taken a wide variety of narcotic and non-narcotic pain medications at prescribed high dosages and has received chiropractic care and physical therapy, with limited relief. Plaintiff has attempted to return to work as a waitress, but has been unsuccessful because she is in so much pain. She also reported that her pain was worse after she had a baby because of increased domestic responsibilities.  The fact that she attempted to work, held her baby and attempted to shovel snow, all of which aggravated her condition, are not enough to discredit her testimony. Notably, the Social Security Regulations state that a Plaintiff's efforts to work may be taken into consideration when considering whether Plaintiff's testimony is credible. See SSR 96-7P. This Court finds that Plaintiff's attempts to work to support herself while awaiting a decision on her application for social security benefits supports a finding that her subjective complaints of pain are credible. Even though she admitted that she was wrong in accepting duplicate

_____

activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication a claimant takes to alleviate pain or other symptoms; (v) non-pharmacological other treatments the claimant has sought for relief of symptoms; (vi) any other measures a claimant has used to alleviate symptoms; (vii) and other factors concerning a claimant's functional limitations and restrictions cause by the reported symptoms." Nix 2009 WL 3429616 at *4.

prescriptions for pain medication, this Court does not find that this mistake warrants discrediting Plaintiff's testimony entirely, as it is clear from her medical records that she was in a great deal of pain. Therefore, this Court finds that Plaintiff's subjective complaints of pain are credible.

Lastly, the record reveals that Plaintiff's heart impairment amounts to a severe impairment within the meaning of the Act. It was noted in the record that following surgery her symptoms were exertional but, non-cardiac in nature. Nevertheless, this Court takes Plaintiff's exertional symptoms into account when considering whether Plaintiff is disabled within the meaning of the Act.

Based on the medical evidence in the record from Plaintiff's treating physicians and the psychiatric report from consultative physician Dr. Thomassen, and Plaintiff's subjective complaints of pain and exertional symptoms, this Court finds that Plaintiff is not able to perform sedentary work, as determined by the ALJ. There is substantial evidence in the record to support a finding that Plaintiff is disabled within the meaning of the Act by a combination of debilitating back pain and depression. Because the Court finds that there is persuasive proof of disability and that remand for further evidentiary proceedings would serve no further purpose, payment of Social Security disability benefits is appropriate. See Carroll v. Secretary of Health and Human Serv., 705 F.2d 638, 644 (2d Cir.1981). The goal of this policy is "to

shorten the often painfully slow process by which disability determinations are made." Id.[2] Accordingly, judgment on the pleadings and payment of benefits is hereby granted for the plaintiff.

## CONCLUSION

The court hereby grants judgment on the pleadings in favor of the Plaintiff. The Commissioner's motion for judgment on the pleadings is denied and the case is remanded to the Commissioner for calculation and payment of benefits.


ALL OF THE ABOVE IS SO ORDERED.

                              s/Michael A. Telesca
                            MICHAEL A. TELESCA
                            United States District Judge

Dated:      Rochester, New York
            December 6, 2010

---

[2]This Court notes that Plaintiff's case has been pending since 1998. The case was twice remanded to the Commissioner by this Court and was also remanded for re-hearing by the Appeals Council. Notably, upon this Court's issuance of judgment remanding the case to the Commissioner by stipulation of the parties on April 17, 2007, a hearing was not held until February 4, 2009, nearly two years after the date of remand and more that ten years after the date of Plaintiff's original application.